## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re GUE Liquidation Companies, Inc. | § | **Chapter 11** |
| | § | |
| **Post-Effective Date Debtor** | § | **Case No. 19-11240 (LSS)** |
| | § | |
| | § | |

-------------------------------------------------------------------------------

| | | |
|---|---|---|
| | § | |
| **HOWLEY LAW PLLC,** | § | |
| **LIQUIDATING TRUSTEE** | § | |
| **FOR THE GUE DEBTOR** | § | |
| **LIQUIDATION TRUST,** | § | |
|     **Plaintiff,** | § | |
| | § | |
| | § | |
| | § | |
| **v.** | § | **Adversary Proceeding** |
| | § | **No. 20-50773 (LSS)** |
| **OMNI AGENT SOLUTIONS, INC.,** | § | |
| **EAST WEST BANCORP, INC.,** | § | |
| **ERIC SCHWARZ AND BRIAN** | § | |
| **OSBORNE,** | § | |
|     **Defendants.** | § | |

## AMENDED COMPLAINT

On behalf of the GUE Debtor Liquidation Trust (the "Trust"), Plaintiff and Trustee Howley Law PLLC (the "Trustee") files this Amended Complaint[1] against Defendants Omni Agent Solutions, Inc. d/b/a Omni Management Group ("Omni"), East West Bancorp, Inc. ("East West"), Eric Schwarz ("Schwarz") and Brian Osborne ("Osborne" and, with Omni, East West and Schwarz, "Defendants").  The Trustee respectfully shows the following:

---

[1] This Amended Complaint is only to correct two typographical errors in the original Complaint. Plaintiff respectfully reserves the right to further amend the complaint pursuant to Fed. R. Civ. P. 15 and Fed. R. Bankr. P. 7015.

**I.**
**Preliminary Statement/Nature of the Action**

1.      This action results from the egregious and surprising failures of a large bank and professionals in claims administration and disbursement to perform even the most basic of their services in a competent manner.  Due to these parties' neglect, misrepresentations, breaches of various duties, failures to perform – and jaw-dropping inattentiveness – the GUE Debtor Liquidation Trust has now lost more than $16 million in funds which should have been available to satisfy obligations of the Trust.

2.      This Trust was created and funded as part of Chapter 11 cases for the GUE Liquidation Companies, Inc. f/k/a the FTD, Inc. bankruptcy estates (the "Estates") to pay administrative, priority, professional and other secured claims.  Defendant Omni is a noticing, claims and disbursement agent which represents that it will, *e.g.,* "open necessary bank accounts and safely and securely manage distribution proceeds from initial receipt to final distribution." Defendant East West is a bank that Omni often uses and used here.  East West represents that it provides, among other things, "multi-layer fraud protection" with "dedicated industry professionals with knowledge in all aspects of banking requirements of the bankruptcy."

3.      Unfortunately for the Trust and $16 million of its funds, neither Omni's nor East West's representations proved true.  Instead, over a short two-week period in March 2020, the Trust's accounts at East West were almost completely emptied in a series of obviously fraudulent wire transfers, including six very large transfers made to a bank in Hong Kong.  Had Defendants not been completely "asleep at the switch," they would have noticed – and prevented – these fraudulent wire transfers for at least four reasons:  (1) the wires' destinations in Hong Kong were obviously wrong for any legitimate obligations of the Trust's based on the purposes for which

the Trust was established and its activities up to that point, (2) the transferred amounts were obviously too large to be for proper Trust account functions, *e.g.,* the payment of "Professional Fees," (3) the names of the payees on the wire transfers were not shown on any list of creditors, professionals or other beneficiaries of the Trust, and (4) there could be no legitimate reasons for emptying this Chapter 11 Trust's accounts of virtually all their funds in a short, 14-day period. Even the emails which Omni received requesting that the fraudulent transfers be made from the Trust's accounts were so riddled with improper syntax, spoofed email addresses, grammatical mistakes and plainly suspicious instructions that no reasonable person could believe that they constituted Trust communications.  These transfers were so obviously improper that another bank, BB&T, immediately noticed the one domestic transfer routed through it and quickly alerted East West to the wrongdoing.  Had East West and Omni exercised the slightest level of care, they likewise would have immediately noticed and prevented the fraudulent transfers from the Trust's accounts.

4.      Once alerted to the fraud, the Trustee immediately contacted both U.S. and Hong Kong law enforcement authorities and filed an action in Hong Kong to freeze any recoverable funds.  The Trustee now also brings this adversary action to recover the lost amounts from those who represented they could, and would, securely manage, supervise and disburse the Trust's payments to creditors and provide the Trust accounts with effective fraud protection.

**II.**
**Parties**

5.      Plaintiff and Trustee Howley Law PLLC is a professional limited liability company organized under the laws of the state of Texas.  The Trustee has its address at 711 Louisiana, Suite 1850, Houston, Texas 77002.  The Trustee brings this action in its capacity as

the Liquidating Trustee for the GUE Debtor Liquidation Trust created in the above-captioned bankruptcy case.

6.      Defendant Omni is a C-corporation organized under the laws of the state of California.  Omni has its principal place of business at 5955 DeSoto Ave., Suite 100, Woodland Hills, California 91367.  Omni may be served by serving its agent for service of process Vcorp Services CA, Inc. at 818 West Seventh Street, Suite 930, Los Angeles, California 90017.

7.      Defendant East West is a C-corporation organized under the laws of the state of Delaware.  East West has its principal place of business at 135 North Los Robles Avenue, 7th Floor, Pasadena, California 91101.  East West may be served by serving its agent for service of process Douglas P. Krause at 135 N Los Robles Avenue, 7th Floor, Pasadena, California 91101.

8.      Defendant Eric Schwarz is an individual and citizen of the State of California.  Schwarz may be served with process at 5955 DeSoto Ave., Suite 100, Woodland Hills, California 91367.  At the relevant times, Schwarz was Omni's Chief Financial Officer.

9.      Defendant Brian Osborne is an individual and citizen of the State of California.  Osborne may be served with process at 5955 DeSoto Ave., Suite 100, Woodland Hills, California 91367.  At the relevant times, Osborne was Omni's Chief Executive Officer and/or President.

### III.
### Jurisdiction and Venue

10.      This Court has jurisdiction to hear this matter under 28 U.S.C. §§ 157(a) and 1334.  This adversary is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (H) and (O). Venue is proper in this Court under 28 U.S.C. §§ 1408, 1409.  This adversary proceeding arises in and/or is related to the above-captioned bankruptcy case, *In re GUE Liquidation Companies, Inc.*  (Case No. 19-11240 (LSS)) pending before the Bankruptcy Court for the

District of Delaware.  Pursuant to rule 7008(a) of the Federal Rules of Bankruptcy Procedure, the Plaintiff consents to the entry of final judgments or orders with respect to this Amended Complaint.

**IV.**
**Facts**

11.     The GUE Debtor Liquidation Trust f/k/a the GUE Liquidation Companies, Inc. was created as part of Chapter 11 cases for the Estates.  Since its creation, this Trust has faithfully discharged its duties under and in accordance with the Chapter 11 Plan and the applicable Debtor Liquidation Trust Agreement.  Among other things, it has reviewed, analyzed, and/or objected to a very large number of administrative, priority, and secured claims filed against the Debtors' Estates and obtained orders sustaining omnibus objections to the vast majority of those claims.  These efforts have increased recoveries to the Trust's beneficiaries by reducing the size of its claims pool.  The Trustee also consensually resolved a complex and long-standing dispute with the purchaser of a flowers business over a working capital adjustment that added substantial assets to the Debtor Liquidation Trust.

12.     Despite these successes, during March of 2020, the Trust was an unknowing and innocent victim of a series of cyber fraud incidents resulting in the theft of substantially all of the cash in its bank accounts.  The acts and omissions of the parties who allowed these attacks on the Trust's assets to occur form the bases of the claims that the Trustee now asserts and are detailed below.

**A.     The Trustee inherited previously existing relationships between Estate professionals and the Defendants.**

13.     When the Trust became effective on December 30, 2019, the Trustee inherited a number of relationships which had previously been established between the Estates and certain

professionals and institutions.  These relationships included the Estates' having engaged Omni

before July 2019 to provide secure claims administration and noticing services in the bankruptcy

cases for the Estates.  The Estates had also engaged two other entities, *i.e.*, a consulting firm

specializing in the turnaround/Chapter 11 matters, and a law firm that represented the Estates in

the bankruptcy cases.

14.     Schwarz is Omni's Chief Financial Officer.  Osborne is Omni's Chief Executive

Officer and President.  Schwarz and Osborne are the natural persons who acted as Omni's agents

in committing the acts and omissions alleged herein.

15.     As part of the sales process for the Estates, Osborne began communicating no

later than July 2019 with both the consulting firm and the Estates' law firm about Omni's acting

as a disbursement agent on bank accounts to be opened for the Estates and its successor in

interest, the Trust.  For example, in a July 10, 2019 email, Osborne advocated East West as the

institution where Omni did its banking and recommended East West to both the consulting firm

and the law firm for their Estate dealings.

16.     By July 31, 2019, Osborne obtained the consulting firm's and the law firm's

consent to using East West as the bank to safely and securely manage various escrow accounts

set up for specific purposes tied to the cases.  Osborne then emailed East West customer service

specialist Sharon Jones ("Jones") with instructions for opening the Estates' accounts.  On August

8, 2019, Jones notified Osborne that three escrow accounts for the Estates had been opened at

East West.  Acting on instructions from Omni, Jones subsequently opened another two escrow

accounts for the Estates.  The Estates accordingly had five accounts at East West.  However, the

signatories to the accounts were only Osborne and Schwarz.

17.     As the deadline was approaching for the Trust to become effective, the Trustee evaluated options for depository banks and initially expressed interest in placing the Estates' existing accounts with another institution.  However, in telephone conversations with the Trustee occurring in mid- and late- December 2019, Osborne emphasized that Omni had a longstanding relationship with East West and that Omni would serve as an additional layer of protection and security for the Trust's accounts.  This relationship was a principal reason that Osborne and Omni had recommended to the Estates' consulting firm and law firm – months before the Trustee was appointed – that East West be the bank for holding the Estates' accounts.  In subsequent conversations with the Trustee, Osborne made assurances that, in conjunction with using East West as the bank for the accounts, Omni and East West Bank as a team would be able to provide the Estates and/or the Trust with appropriate and secure disbursement agent services.

**B.     Omni and East West represent they will provide appropriate account security.**

18.     The Trustee also examined information disseminated by Omni and by East West in mid- to late- December 2019.  This information included websites for Omni and East West. As described by its website, Omni is "a full-service distribution agent providing fiduciary services for 49 years."   This website represents that Omni has the "experience and tools necessary to ensure that all distributions are performed timely and accurately" and that "Omni professionals provide disbursement services in ... liquidations and litigation proceedings and have managed and distributed assets and cash in excess of $1B."  The website promises that "Omni will open necessary bank accounts and safely and securely manage distribution proceeds from initial receipt to final distribution."

19.    Based on these and other representations by Omni and Osborne,[2] on which the Trustee relied, the Trustee consented to Omni providing account-opening, noticing, claims and disbursement services for or on behalf of the Trust.  As the Trust's disbursement agent, Omni had access to and maintained the database of all Trust creditors entitled to distributions as part of the liquidation and wind-down.

20.    The East West website touted the bank's ability to handle disbursement accounts created as part of bankruptcy processes, Chapter 11 reorganization plans and/or liquidations. East West's information contained numerous representations, including, but not limited to, the following –

> [East West] provide[s] ... client services specialists trained to accommodate the unique requirements of the professional fiduciary.
>
> ....
>
> We also maintain accounts for disputed depository relationships, litigation escrows, disbursement accounts ... or accounts where a ... control account is mandated.  Our dedicated team of premier client specialists deliver a private banking level of service to the professional fiduciary in multiple industries.

21.    The bank's materials further stated that East West possesses the following "Fields of Expertise":

- Professional Fiduciaries
- Liquidating Trustee
- State & Federal Court Receivers
- Restructuring Professionals (attorneys & advisors)
- ....

---

[2]  Omni's website also states that its disbursement services include:
- Payout/disbursement calculations
- Disbursement reporting
- Opening and managing bank accounts
- Generating distribution checks (including preparation of stub language)
- Setting up positive pay tracking
- Distribution service and tracking
- Complete bank reconciliations with full reporting capabilities
- Tax reporting, as required

- Disbursing Agents
- Claims Administrators
- Chapter 11 Trustees

22.    In addition, the East West materials stated that the bank provides:

- Experienced bankers who have been specially trained to work with the specific technical and legal requirements of fiduciary bank accounts.
....
- Full range of industry related, in-house escrow and control agreement expertise.
....
- Multi-layer fraud protection.

23.    The information represented that East West routinely delivers the following services to bankruptcy trustees:

- Authorized bankruptcy depository by the U.S. Trustee in all districts.
- Trustee Deposit Services team of dedicated industry professionals with knowledge in all aspects of banking requirements of the bankruptcy process.
- Private banking level of relationship with knowledgeable and responsive specialists who understand the unique requirements of bankruptcy professionals.

24.    Notably, many of these East West representations are specific in nature.  For example, the website specifically stated that East West provided "multi-layer fraud protection" for accounts that the bank handles.  East West also represented that it has "expertise" in the work of "Disbursing Agents" and Chapter 11 Trustees, and employs bankers "specially trained" in the "specific technical and legal requirements of fiduciary bank accounts," who have "in-house escrow and control agreement expertise."

25.    As the name implies, "multi-layer fraud protection" entails multiple layers of protection against electronic, wire and cyber fraud.  As understood in the banking industry, multi-layer fraud protection includes protections that are typically "endpoint-centric" at Layer 1,

"navigation-centric" at Layer 2, "channel-centric" at Layer 3, "cross-channel centric" at Layer 4, and directed to analysis of two or more relationships at Layer 5.[3]

### C. The Trustee relied on Defendants' representations.

26.     On December 30, 2019, the Estates' Chief Restructuring Officer authorized Omni to transfer control of the five existing Estates escrow accounts to the Trustee.   Also, on December 30, 2019, Omni opened two more accounts for the Trust at East West.  The Trust had and has these accounts at East West.  Again, however, the only signatories for the accounts were Osborne    and    Schwarz.    The    Trustee    relied    on    Omni's    representations,    including recommendations from Osborne, and East West's representations, in allowing Omni to (1) maintain the five existing Estates escrow accounts at East West and (2) open the two additional escrow accounts for the Trust at East West.

27.     In late 2019, Osborne also began conversations with the Trustee regarding Omni's processing wire transfers from the Trust's accounts, so that Omni could safely and securely manage disbursement of funds to creditors of the Trust.   These conversations continued into early 2020.   In January, Osborne, the Omni treasury team, and the Trustee discussed the

---

[3] Layer 1 entails a band of authentication for customer access channels.  The minimum standard for low-risk scenarios is two-factor authentication, such as a combination of hardware or software ID and a personal identification number (PIN), or a user ID and password. Layer 2 includes, *e.g.,* the real-time capture of customer and account online activity, which is then used to build a customer profile to determine what is normal or abnormal for the specific customer.  Layer 3 represented the industry best practices approximately five years ago; the concept entails having an end-to-end enterprise platform that can address a specific channel and provide extensibility across channels.  For example, one major U.S. bank implemented a real-time fraud prevention system, and the system is channel-centric for the commercial ACH and wire systems, but it views activity in the context of an account profile.  At Layer 4, an institution takes a cross-channel approach to scoring transactions and entities across multiple accounts, products and channels.   Transactions that may otherwise look innocent can appear suspicious when correlated with activities in other areas.  Layer 5 analyzes activities and relationships within a network of related entities (*e.g.,* customers who share demographic data or transactions).  Entity link analysis helps detect and prevent fraud by identifying patterns of behavior that only appear suspicious when viewed across related accounts or entities, and then discovering the networks associated with an identified suspicious account, entity or individual to determine if a case is limited to an isolated individual or is part of a larger conspiracy.

protocols for making wire transfers from the Trust's accounts.  In addition to protocols that Osborne recommended, the Trustee requested that the protocols include the requirement of a written letter request sent via email twice a month (on the 1st and 15th or the next business day) containing the wire transfer or check payment instructions on the Trustee's letterhead.  Osborne assured the Trustee that if anything out-of-the-ordinary or suspicious occurred, Omni would take appropriate steps and contact the Trustee.  Omni had and maintained, and Osborne and Schwarz both had access to, a list of the claimants and beneficiaries of the Trust.

28.     In January 2020, Omni implemented protocols for making payments from the accounts on behalf of the Trust.  When and if these protocols were properly followed, Omni would act as agent for the Trust and authorize payment orders from Trust accounts on behalf of the true sender, the Trust itself.  Omni would then process the payment orders from accounts held at East West Bank and email a payment confirmation back to the Trustee.

**D.     Omni acted as the Trust's agent and fiduciary.**

29.     At the relevant times, all the escrow accounts that Omni opened at East West for the Estates or the Trust showed the Trust as the actual owner of the accounts.  The accounts also showed the Trust as East West's customer.   These accounts were labelled, *e.g.,* "GUE Liquidation Company – Escrow Labor and Taxes, Account No. XX-XXXXX528," "GUE Liquidation Company – Escrow for General Account, Account No. XX-XXXXX193," "GUE Liquidation Company – Escrow for Professional Fees, Account No. XX-XXXXX200," and "GUE Liquidation Company – Escrow for GF Liabilities, Account No. XX-XXXXX577."

30.     Omni, East West, Schwarz and Osborne knew that Omni had opened the bank accounts at East West to fulfill Omni's duties as the Trust's agent and fiduciary.  Omni, East West, Schwarz and Osborne also were aware that the Trust was East West's actual customer.  As

Defendants also knew and were aware, each account that Omni set up at East West for the Estates or Trust served as an escrow or custodial account containing funds designated for a specific purpose of, or use by, the Trust.

**E.      Defendants permitted obviously improper transfers to be made from the Trust's accounts.**

31.      Each of the Trust's accounts at East West was assigned a specific purpose.  For example, one of the Trust's accounts at East West held funds for the payment of professional fees incurred in the Chapter 11 cases, and payable to law firms or professionals with whom Omni had worked before on many occasions.  Others held funds for payment of taxes potentially owed by the Trust or funding the severance and/or paid/personal-time-off payments, or similar priority claims of former employees of the Trust's predecessors-in-interest.

32.      Despite Omni's, East West's, Schwarz' and Osborne's awareness that Omni opened these accounts to serve specified Trust purposes, Defendants allowed at least seven large and obviously improper wire transfers to be made from the Trust accounts at East West.  The wire transfer payment orders executed from Trust accounts shown below were not authorized by the Trust, nor by any individual or entity authorized to initiate wire transfers or payment orders on behalf of the Trust.  These unauthorized payment orders, which were obviously far in excess of the amounts that would have been paid in the course of the Trust's obligations, included the following –

1.  March 11, 2020: $280,000 to CSD Tange Ltd. at Bank of China (Hong Kong)
        From Account #:  XX-XXXXX193;
2.  March 16, 2020: $280,000 to Linx Trading Co., Ltd. at Bank of China (Hong Kong)
        From Account #:  XX-XXXXX193;
3.  March 17, 2020: $5,940,000 to Linx Trading Co. at Bank of China (Hong Kong)
        From Account #:  XX-XXXXX193;
4.  March 18, 2020: $6,320,000 to Linx Trading Co. at Bank of China (Hong Kong)
        From Account #:  XX-XXXXX193;
5.  March 19, 2020: $1,950,000 to Linx Trading Co. at Bank of China (Hong Kong)

From Account #:  XX-XXXXX200;
6.  March 23, 2020: $450,000 to Dynamics Construction at BB&T (Mesquite, Texas)
        From Account #:  XX-XXXXX193;
7.  March 25, 2020: $1,970,000 to HK She Trading Ltd. at Bank of China (Hong Kong)
        From Account #:  XX-XXXXX528;

33.    Six of these transfers, amounting to $16,740,000, were sent to accounts at Bank of China (Hong Kong), and a seventh transfer of $450,000 was sent to BB&T Bank.  None of these transfers went to any entity entitled to receive payment from the Trust. In fact, these unauthorized payment orders were discovered on or about March 31, 2020, after another bank, BB&T, thought that the March 23, 2020 transfer was suspicious and alerted East West Bank.  As of the date of this complaint, only approximately $450,000 of the fraudulent transfers has been recovered.

34.    Omni, through acts and omissions specifically including those of its CFO Schwarz and CEO and President Osborne, actively participated in allowing these fraudulent, obviously improper and unauthorized payment orders to occur.  Although an investigation is still proceeding into the origin of the attack, a computer hacker compromised the email account of an employee of the Trustee and sent Schwarz emails on dates including March 11, 13, 17, 18-19, 23, 24-25, 2020 directing Schwarz to make the above wire payments.  These emails resulted in the large – and obviously unauthorized – wires being sent from East West using Estates funds from the Trust's accounts.  Each time that East West effected an obviously improper and unauthorized payment order, the bank sent a wire confirmation to Schwarz and Osborne at the Omni email addresses bosborne@omniagent.com and eschwarz@omniagent.com.

35.    East West was aware that Omni acted as the claims and disbursement agent for the Trust.  As a result of its customer identification program, East West knew or should have known that Omni would possess or have access to Trust documents or instruments showing the purposes of the Trust and its accounts.  East West should have known of the contents or

directives in those documents or instruments.  For example, Omni maintained (and Osborne and Schwarz had access to) a list of the secured, priority and administrative creditors, professionals and beneficiaries of the Trust.  Merely looking at this list would have shown Omni, East West, Osborne and/or Schwarz that the wire transfers were improper because the transfers were not made to any of these creditors, professionals and beneficiaries.  East West also knew that the Trust's accounts were set up for payment of specific types of claims against the Trust in winding down its obligations, or in satisfying other obligations in the Chapter 11 bankruptcy plan.  Also, as part of the banking requirements pertaining to customer due diligence, East West implemented, or should have implemented, security procedures to assess or predict the types of transactions a customer would make, in order to then be able to detect anomalous (or suspicious) behavior.  East West also should have implemented a protocol whereby it contacted an individual other than Omni's Schwarz to confirm that the payment orders ostensibly authorized by Schwarz were indeed orders placed on behalf of the Trust.

36.     Moreover, to comply with its representations to potential customers, East West should have implemented an effective multi-layer fraud protection program including, at a minimum, *e.g.,* basic Layer 2 protections used to create a profile to determine what are normal vs. abnormal transactions for a specific customer.  East West failed to establish commercially reasonable security procedures to ensure that these payment orders were authorized and consistent with the purpose and intent of the Trust and its specifically designated accounts.  East West also did not implement any process to ensure these payment orders were consistent with the Trust's "track record" of typically authorizing payments (1) twice per month, (2) to creditors on the claims matrix managed by Omni, and bankruptcy professionals or taxing authorities also

on the matrix managed by Omni, (3) to recipients in the U.S.A., and (4) in amounts far less than those of the above payment orders.

37.    The company for which the Trust is successor was a well-recognized floral service company, retailer and wholesaler based in Downers Grove, Illinois.   What is obvious from the dates, pattern, destinations and large amounts of the above payment orders is that these wire transfers could not have been authorized by any agent acting properly and within the scope of its authority for the Trust.   Also obvious from the dates, pattern, destinations and large amounts of these payment orders is that they were improper and unauthorized transactions, given the specific designated purposes for the Trust's accounts at East West.   As evident from the BB&T Bank's detecting the fraud almost immediately after being privy to only one of the seven payment orders (and a payment order that was domestic rather than international, and in the amount of only $450,000, rather than, *e.g.*, $6.32 million), no reasonable person could believe the payment orders were properly authorized.   No reasonable person, disbursement agent or bank in Omni's, East West's, Schwarz' or Osborne's positions could have justifiably believed that the large payment orders set out above – which in all but one instance went to accounts in Hong Kong at the Bank of China in the name of, *e.g.,* "CSD Tange Limited," "Linx Trading Co., Limited" and "HK She Trading Limited" – were intended to, *e.g.,* pay U.S. or state taxes owed by the Trust, pay fees of professionals in the United States providing services to the Trust or the Estates, or pay priority claims obligations of the Trust.

38.    Moreover, the effect of the payment orders was to effectively empty the Trust's accounts over a two-week period well before the conclusion of the claims reconciliation process of which Omni was a part.   No reasonable person, disbursement agent or bank in Omni's, East West's, Schwarz' or Osborne's positions could have justifiably believed that these payments

orders were authorized by any person faithfully executing agent or fiduciary responsibilities of the Trust.

39.    The documents available to East West, Omni, Schwarz and/or Osborne show the extent to which these parties were derelict in their duties.  For example, an email sent to Omni from the hacker on or about March 11 and inquiring into a transfer spoofed the email address for the Trustee's principal as "tom@howely-law.com" instead of using the correct spelling, "tom@howley-law.com."  Another email on March 24 spoofed Howley's email address as "tom@howaly-law.com."  Other aspects of the hacker's emails exhibited plainly suspicious instructions and syntax, such as a March 13 email stating that "CDS Tange ... also they have sent new wire information because the problem might be from their bank.  The wire need to be sent to their new banking information."  The hacker's emails also misused the singular vs. the plural; in a March 19 email, the hacker wrote, "[S]end me confirmation as soon as the wires has been sent."  Another March 19 email stated, "Oh i see.  So can i send over payment authorization because the wire need to go out today before the international cut-off time."  Still another March 19 email stated, "We will need to wire 450,000 to Dynamics Construction today and send the balance when our wire arrive tomorrow."  And a March 23 email purported to explain, "Because the sender was unable to complete the wire due to the Covid-19 their company was closed for a week.  Also, can the wire go out directly to HK on Thursday from Esc-Networking or you need to move funds to ECS Gen before you can send a wire to HK??"[4]

---

[4]  This series of emails between Omni and the hacker included the following:  March 11, 2020 – Schwarz: "I just verbally confirmed the wire with East West Bank and will forward the confirmation upon receipt."; hacker:  "Is the wire sent?  Please advise."; Schwarz:  "Below is confirmation of the wire to CDS Tange."; March 13 – hacker:  "Attached please find a new payment authorization letter dated today March 13, 2020."; Schwarz:  "I have not been contacted by the bank regarding the rejection.  Will follow up."; hacker:  "CDS Tange just sent another email, asking if we received the wire back and also they have sent a new wire information because the problem might be from their bank."; March 17 – hacker: "Attached please find payment instructions for the March 17, 2020 payables.  Please let me know once

40.     Like other acts and omissions detailed herein, the Defendants' failure to notice the hacker's misuse of language, unorthodox syntax, suspicious wiring requests and spoofing of email addresses show a lack of care far exceeding mere ordinary negligence.

41.     The wrongful transfers occurred within approximately a 14-day period without the knowledge of the Trustee or anyone working on behalf of the Trust.  This short timeframe did not allow the Trustee to receive any account statements showing the transfers as they were actually occurring.  Nevertheless, once alerted to the transfers as the result of BB&T Banks' flagging a plainly suspicious transaction, the Trustee immediately took action to protect the Trust.  The actions included, but were not limited to, the Trustee's contacting U.S. law enforcement, contacting the Hong Kong police department, filing an action in Hong Kong and moving to freeze the accounts to which the wrongful accounts were made.  Unfortunately, the damages caused by Defendants' acts, omissions and breaches of duties were by then largely beyond repair.

**V.**

---

the wire has been processed."; Schwarz:  "Below is confirmation of today's Lynx Trading wire transfer."; March 18 – hacker:  "Attached please find payment instructions for the March 18, 2020 payables.  Please let me know once the wire has been processed."; March 19 – hacker:  "Attached please find payment instructions for the March 19, 2020 payables.  Please process both wires today and send me confirmation as soon as the wires has been sent."; hacker:  "Oh i see.  So can i send over the payment authorization because the wire need to go out the day before the international cut-off time."; March 19 – hacker: "Attached please find payment instructions."; Schwarz: "It's too late to effect a wire dated today. Domestic wire deadline is 2:30 … ."; hacker:  "We will need to wire 450,000 to Dynamics Construction today and send the balance when our wire arrive tomorrow."; March 25 – hacker:  "Yes i will check with Dynamics Construction today.   Attached please find payment instructions for the March 25, 2020 payables.  Please process wire today from Esc--Networking and send me confirmation as soon as the wire is sent."; March 24 – Schwarz: "Would it be possible to check again with Dynamics Construction on the $70K?  Beginning on Friday afternoon East West had issues with its wire vendor which resulted in what is normally an automated process to a manual process of loading wires into the Fed Wire System.  East West has verified that the wire information (i.e., routing #, account #) was processed accurately."; hacker: "Can you please let me know why Dynamics Construction did not receive the 70k yet."; hacker: "Can you please check with the bank because Dynamics Construction did not receive the 70k wire that was sent yesterday."; hacker:  "Thank you for the confirmation. …  Also can a wire go out directly to HK on Thursday from Esc—Networking or you need to move funds to ESC Gen before you can send a wire to HK??"

## Causes of Action

### A.    First Cause of Action, Breach of contract or agency agreement against Omni

42.    The Trustee repeats and realleges the allegations in each of the preceding paragraphs as if fully set forth herein.

43.    Omni agreed with the Trustee to act as a fiduciary of the Trust in providing disbursement agent services to the Trust as part of the Trust's liquidation obligations.  These services included opening bank accounts and safely and securely managing distributions or disbursements.  The Trustee, acting for the benefit of the Trust, performed under this agreement.  Omni breached the agreement by, among other things, failing to safely and securely manage the distribution or disbursement of account funds.  As a result the Trust was damaged.

### B.    Second Cause of Action, Negligent misrepresentation against Omni

44.    The Trustee repeats and realleges the allegations in each of the preceding paragraphs as if fully set forth herein.

45.    Omni made misrepresentations of past or existing material facts to the Trust.  These misrepresentations included, but were not limited to, Omni's representation that it would safely and securely manage assets and/or funds held in the accounts that Omni opened for the Trust at East West.  Omni did not have reasonable grounds for believing its representations to the Trust to be true.  Omni had the intent to induce another's reliance, *i.e.,* the Trustee's reliance, on the facts misrepresented.  The Trustee was ignorant of the truth and the Trustee justifiably relied on Omni's representations.  As a result, the Trust was damaged.

### C.    Third Cause of Action, Negligence/breach of the duty of ordinary care against Omni

46.    The Trustee repeats and realleges the allegations in each of the preceding paragraphs as if fully set forth herein.

47.     Omni had an agency and fiduciary relationship with the Trust.  This agency relationship imposed upon Omni the duty to exercise ordinary care in authorizing disbursements of funds or payment orders to be made from the Trust's accounts at East West.  Omni breached its duty to exercise ordinary care.  Omni's breach of the duty to exercise ordinary care was the legal cause of damages to the Trust, and the Trust suffered or incurred actual damages.

**D.      Fourth Cause of Action, Breach of fiduciary duty against Omni**

48.     The Trustee repeats and realleges the allegations in each of the preceding paragraphs as if fully set forth herein.

49.     Omni and the Trustee contracted or otherwise effectively agreed for Omni to act as an agent of the Trust in providing disbursement services.  This agency constituted both a consensual and a fiduciary relationship.  Omni violated, breached, and otherwise failed to follow the instructions and obligations governing its agency relationship with the Trust.  Omni failed to manage the disbursement of the Trust's funds safely or securely and failed to disburse funds held in the Trust's accounts at East West with reasonable care or competence.  Omni breached its fiduciary duty to the Trust and caused the Trust damages.

**E.      Fifth Cause of Action, Gross negligence against Omni**

50.     The Trustee repeats and realleges the allegations in each of the preceding paragraphs as if fully set forth herein.

51.     In addition to being negligent, Omni's conduct partook of and included a want of even scant care and/or an extreme departure from the ordinary standard of conduct exhibited by other disbursement agents in Omni's position or circumstances.  The facts set out above show that Omni's conduct exhibits a lack of care to a degree that it may be presumed to indicate a

passive and indifferent attitude toward results occurring to Omni's principal, the Trust.  Omni's gross negligence proximately and/or legally caused injury to the Trust.

> **F.    Six Cause of Action, Refund under U.C.C. § 4A-204 and/or California Commercial Code § 11204 against East West**

52.    The Trustee repeats and realleges the allegations in each of the preceding paragraphs as if fully set forth herein.

**No reasonable or justifiable reliance – East West's duty to inquire further**

53.    Any reasonable agent, person or bank in East West's or Omni's position – and any commercially reasonable security measures in place at the time the wire transfers were requested – would have flagged the requests for the payment orders as likely improper and requiring additional verification.  No reasonable agent, person or bank in East West's or Omni's position could have justifiably believed that an agent or fiduciary of the Trust, acting properly and within the scope of its authority, would authorize that almost all funds in accounts having specified purposes, *e.g.,* professional fees, taxes, or labor-related costs, be transferred in such few and large amounts to the Bank of China in Hong Kong for the accounts of entities that were obviously not beneficiaries or creditors of the Trust in such a short period of time.  No reasonable agent, bank or person in East West's or Omni's position could have justifiably believed that, in requesting the payment orders set out above, an agent or fiduciary was acting properly and within the scope of that agent's or fiduciary's authority.  East West and Omni could not and did not reasonably or justifiably believe that Omni or any other agent, employee or fiduciary of the Trust was authorized to request the payment orders set out above.  East West and Omni knew or had reason to know that any purported employee, agent or fiduciary requesting these payment orders was acting improperly and beyond the scope of its authority to act for or bind the Trust.  East West and Omni were aware and had knowledge of facts and circumstances

putting them on notice to inquire as to whether the payment orders exceeded Omni's, or any other purported employee's, agent's or fiduciary's, authority.

54.     The facts and circumstances of the wire transfers also served to put East West and Omni on notice that these purported payment orders were not authorized uses of the funds in accounts that Omni had opened for the benefit of the Trust and its beneficiaries.  East West and Omni had a duty to inquire further as to whether these payment orders were, in fact, authorized uses of the Trust's accounts and funds and to inquire whether the payment orders were within the scope of Omni's or an agent's or employee's authority to act for the Trust.   The facts and circumstances surrounding the payment orders showed East West and Omni that they could not reasonably or justifiably rely on those payment orders as being within the scope of any faithful agent's, employee's or fiduciary's authority to act for the Trust.

### Payment orders unauthorized and not effective as orders of the Trust under U.C.C. § 4A-202 and/or California Commercial Code § 11202

55.     The payment orders set out above were not authorized orders or wire transfers of the Trust.  The Trust did not authorize these payment orders, nor is the Trust otherwise bound by the payment orders under the law of agency.

56.     The security procedures employed by East West and Omni for the payment orders were not commercially reasonable methods of providing security against unauthorized payment orders.  In addition, those security procedures were not commercially reasonable, considering the wishes of the Trust as expressed to East West by the Trust and/or Omni, the circumstances of the Trust known to East West and Omni, including the size, type, and frequency of payment orders to East West normally issued by or on behalf of the Trust, alternative security procedures offered by East West to or for the Trust, and security procedures in general use by customers and receiving banks similarly situated.  East West and Omni did not accept or send the payment

orders in good faith and in compliance with commercially reasonable security procedures and any written agreement or instruction of or for the Trust restricting acceptance of payment orders issued in the name of the customer.

57.     East West offered no alternative security procedures to or for the Trust, other than or different from the security procedures in place when the payment orders occurred.  The Trust did not refuse any security procedure that was commercially reasonable for the Trust and which East West had offered to or for the Trust.  The Trust did not expressly agree in writing to be bound by any payment order, whether or not authorized, issued in the Trust's name, and accepted by East West in compliance with a security procedure chosen by the Trust.

**Payment orders not enforceable under U.C.C. § 4A-203 and/or California Commercial Code § 11203**

58.     If the subject payment orders are found not to be, under U.C.C. § 4A-202(a) and/or California Commercial Code § 11202(a), authorized orders of the Trust, but are effective as orders of the Trust pursuant to U.C.C. § 4A-202(b) and California Commercial Code § 11202(b), then the orders are not enforceable, in whole or part, against the Trust.

59.     East West did not limit by express written agreement the extent to which it was entitled to enforce or retain payment of the payment orders.

60.     East West is not entitled to enforce or retain payment of the payment orders because it is proven, or will be proven, that the payment orders were not caused, directly or indirectly, by a person entrusted at any time with duties to act for the Trust with respect to the payment orders or the security procedure in place at East West at the time of the payment orders, or by a person who obtained access to transmitting facilities of the Trust or who obtained, from a source controlled by the Trust and without authority of East West, information facilitating the breach of the security procedures in place at the time of the payment orders.

61.     East West accepted payment orders issued in the name of the Trust as sender which were not authorized and not effective as orders of the Trust under U.C.C. § 4A-202 and/or California Commercial Code § 11202.  Those payment orders were and are not enforceable, in whole or in part, against the Trust under U.C.C. § 4A-203 and California Commercial Code § 11203.  East West is required to refund the amount of the payment orders to the Trust.  In addition, East West is obligated to pay interest to the Trust on the refundable amount calculated from the date that East West received payment to the date of the refund.

**G.     Seventh Cause of Action, Negligent misrepresentation against East West**

62.     The Trustee repeats and realleges the allegations in each of the preceding paragraphs as if fully set forth herein.

63.     East West made misrepresentations of past or existing material fact in the East West materials or information reviewed by the Trustee.  East West misrepresented that it had commercially reasonable security procedures, or their equivalent, in place to protect the Trust's accounts, and that East West would provide and was providing multi-layer fraud protection for the Trust's accounts and funds.  East West did not have reasonable grounds for believing these misrepresentations to be true.  East West had the intent to induce another's reliance, *i.e.,* the Trustee's reliance, on the facts misrepresented.  The Trustee was ignorant of the truth and the Trustee justifiably relied on East West's misrepresentations.  As a result, the Trust was damaged.

**H.     Eighth Cause of Action, Constructive fraud against East West**

64.     The Trustee repeats and realleges the allegations in each of the preceding paragraphs as if fully set forth herein.

65.     East West has and had a duty to make complete and truthful disclosures to customers or account holders at East West.  East West made material false representations,

concealments and/or nondisclosures in the East West information and materials reviewed by the Trustee.    These false representations included, but were not limited to, East West's misrepresentations that it had commercially reasonable security procedures in place to protect the Trust's accounts and funds, and that East West would provide and was providing multi-layer fraud protection for the Trust's accounts and funds.    East West had knowledge that these representations were false.    East West intended to induce reliance on the part of the Trustee.    The Trustee justifiably relied on East West's representations.    As a result, the Trust was damaged.

**I.        Ninth Cause of Action, Negligence against East West**

66.        The Trustee repeats and realleges the allegations in each of the preceding paragraphs as if fully set forth herein.

67.        East West had a legal duty to use reasonable care in its dealings for or with the Trustee and in its dealings with the accounts opened at East West for the Trust.    East West breached that duty.    East West's breaches of duty proximately and/or legally caused injury to the Trust.

**J.        Tenth Cause of Action, Gross negligence against East West**

68.        The Trustee repeats and realleges the allegations in each of the preceding paragraphs as if fully set forth herein.

69.        In addition to being negligent, East West's conduct partook of and included a want of even scant care and/or an extreme departure from the ordinary standard of conduct exhibited by other banks in East West's position or circumstances.    The facts set out above show that East West's conduct exhibited lack of care to a degree that it may be presumed to indicate a passive and indifferent attitude toward results occurring to East West's customer, the Trust.    East West's gross negligence proximately and/or legally caused injury to the Trust.

**K.    Eleventh Cause of Action, Joint liability with Omni; assertion of same claims against Schwarz and Osborne, in their individual capacities, as against Omni**

70.    The Trustee repeats and realleges the allegations in each of the preceding paragraphs as if fully set forth herein.

71.    Schwarz and Osborne are directors and/or officers of Omni.  Schwarz and Osborne are both agents of Omni.  In committing the above-described acts and omissions, Omni acted principally, if not exclusively, through Osborne and Schwarz.  Schwarz and Osborne personally and actively participated in the wrongdoing and tortious acts or omissions committed by Omni.  Schwarz and Osborne also specifically authorized or directed the wrongdoing and tortious acts or omissions committed by Omni.  Schwarz and Osborne are liable for the wrongful conduct and tortious acts or omissions committed by Omni.  The acts or omissions committed by Omni in which Schwarz and/or Osborne participated, or which Schwarz and/or Osborne authorized or directed, constituted breaches of duties owed to the Trust.  Osborne and Schwarz are jointly liable and co-liable with Omni on the Trustee's claims against Omni.  The Trustee asserts all the same claims against Osborne and Schwarz that the Trustee asserts against Omni.

**L.    Twelfth Cause of Action, Aiding and abetting breach of fiduciary duty against Schwarz and Osbourne**

72.    The Trustee repeats and realleges the allegations in each of the preceding paragraphs as if fully set forth herein.

73.    Omni and the Trustee contracted or otherwise effectively agreed for Omni to act as an agent of the Trust in providing disbursement services.  This agency constituted both a consensual and a fiduciary relationship.  Omni violated, breached, and otherwise failed to follow the instructions and obligations governing its agency relationship with the Trust.  Omni failed to manage the disbursement of the Trust's funds safely or securely and failed to disburse funds held

in the Trust's accounts at East West with reasonable care or competence. Omni breached its fiduciary duty to the Trust and caused the Trust damages.

74.      Schwarz and Osbourne, in their capacities as officers and agents of Omni, knew of and had actual knowledge of Omni's consensual and fiduciary relationship with the Trust. Schwarz and Osborne had actual knowledge of Omni's breach of duties to the Trust.   Schwarz and Osbourne, in their capacities as officers and agents of Omni, substantially assisted Omni in violating, breaching and otherwise failing to follow the instructions and obligations governing Omni's relationship with the Trust.  Due to a lack of oversight, mismanagement and negligence, Schwarz and Osbourne, in their capacities as officers and agents of Omni, aided and abetted Omni when it failed to manage the disbursement of the Trust's funds safely or securely and failed to disburse funds held in the Trust's accounts at East West with reasonable care or competence. Schwarz and Osbourne, in their capacities as officers and agents of Omni, aided and abetted Omni in breaching its fiduciary duty to the Trust and caused the Trust damages. Schwarz's and Osborne's acts and/or omissions were a substantial factor in causing harm to the Trust.

## VI.
## Prayer for Relief

Plaintiff and Trustee respectfully requests that, on final determination of this controversy, the Court enter judgment ordering East West to refund to the GUE Debtor Liquidation Trust the full amount of the payment orders described above, less amounts recovered prior to filing of this action, and further ordering that the Trust recover from East West, Omni, Schwarz and/or Osborne actual and exemplary damages, costs of court, pre and post-judgment interest and attorneys' fees as allowed at law or in equity.  The Trustee further respectfully requests all other just and appropriate relief.

Dated: August 7, 2020
Wilmington, Delaware

**TROUTMAN PEPPER HAMILTON SANDERS LLP**

*/s/ David B. Stratton*
David B. Stratton (DE Bar No. 960)
Douglas D. Herrmann (DE Bar No. 4872)
Kenneth A. Listwak (DE Bar No. 6300)
Hercules Plaza, Suite 5100
1313 N. Market Street
Wilmington, Delaware  19899-1709
Telephone:    (302) 777-6500
Facsimile:    (302) 421-8390
Email:        david.stratton@troutman.com
              douglas.herrmann@troutman.com
              kenneth.listwak@troutman.com

-and-

**STRAWN PICKENS LLP**
John R. Strawn, Jr. (TX Bar No. #19374100)
Andrew L. Pickens (TX Bar No. #15971900)
Pennzoil Place, South Tower
711 Louisiana, Suite 1850
Houston, Texas 77002
Telephone:      (713) 659-9600
Facsimile:      (713) 659-9601
Email:          jstrawn@strawnpickens.com
                apickens@strawnpickens.com

*Attorneys for Plaintiff, Howley Law PLLC, in Its Capacity as Trustee for the GUE Debtor Liquidation Trust*